FILED

OCT 01 2019

Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ABRAHAM SPOTTED ELK, <br><br> Petitioner, <br><br> vs. <br><br> WARDEN MCTIGHE, STATE OF MONTANA, <br><br> Respondents. | Cause No. CV 18-67-BLG-SPW-TJC <br><br> FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

State pro se Petitioner Abraham Spotted Elk filed this action under 28 U.S.C. § 2254. (Doc. 1.) Pursuant to this Court's directive, Spotted Elk filed an Amended Petition. (Doc. 3.)

Following review of his Amended Petition, it appeared Spotted Elk's claims were unexhausted and procedurally defaulted; he was ordered to show cause as to why his petition should not be dismissed. (Doc. 19.) Spotted Elk timely responded to this Court's order and also provided a Supplement to his response, accompanied by exhibits. (Docs. 20, 21, and 21-1.) For the reasons discussed herein, Spotted Elk's petition should be dismissed as procedurally defaulted without excuse.

**I.     28 U.S.C. § 2254 Petition**

The Court is required to screen all actions brought by prisoners who seek

1

relief. 28 U.S.C. § 1915(a). The Court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally frivolous or fails to state a basis upon which relief may be granted. 28 U.S.C. § 1915A(b)(1), (2). This means the Court must dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" Rule 4 Governing Section 2254 Cases. As explained below, because Spotted Elk's claims are procedurally defaulted, the petition should be dismissed.

### A. Procedural History/Spotted Elk's Claims

On August 2, 2016, Spotted Elk entered a no contest plea to Assault on a Peace Officer and entered guilty pleas to two counts of Criminal Endangerment. (Doc. 14-5 at 1.) The Plea Agreement specifically provided that the State would not withdraw its Persistent Felony Offender designation, and that the parties were free to argue for any legal sentence during the sentencing hearing. (Doc. 14-2 at 1, 3.) Spotted Elk also acknowledged his understanding, as a matter of law, that he would not be entitled to withdraw his no contest and/or guilty pleas. *Id.* at 3.

On November 9, 2016, the district court sentenced Spotted Elk to the Montana State Prison for thirty (30) years for both the Assault on a Peace Officer and one count of Criminal Endangerment, with the sentences to run concurrently. On the remaining Criminal Endangerment count, Spotted Elk was sentenced to ten (10) years at the Montana State Prison, which was ordered to run consecutively to

2

the thirty (30) year sentence. (Doc. 14-5 at 2); *see also*, (Doc. 1 at 3, ¶ 4.) Thus, Spotted Elk received a net sentence of forty (40) years.

By his own admission, Spotted Elk did not file a direct appeal or seek any form of collateral review, including via state habeas or postconviction relief. (Doc. 3 at 2, ¶ 8; 3, ¶¶ 11 & 14.) Spotted Elk did file for review of his sentence with the Montana Sentence Review Division. *Id.* at 3, ¶ 13. Spotted Elk's sentence was affirmed. *Id.* at 3, ¶ 13; 5, ¶ 15(B)(5). Spotted Elk was "under the impression that after sentence review [his] only other option was federal habeas corpus" relief. (Doc. 3 at 4, ¶ 15(A)(5)).

In his Amended Petition, Spotted Elk claims: (1) no serious bodily injury was inflicted that would support a conviction for Assault on a Peace Officer (*id.* at 3, ¶ 15(A)); (2) collusion existed by virtue of District Court Judge Souza, who sentenced Spotted Elk in 2016, also purportedly being involved Spotted Elk's 1980 prosecution for sexual assault (*id.* at 4, ¶ 15(B)); and, (3) Spotted Elk was sentenced without notice of denial of the signed plea agreement. *Id.* at 5, ¶ 15(C).

Spotted Elk asks this Court to hold an evidentiary hearing and order his resentencing based upon the purported errors. *Id.* at 7, ¶ 18.

### B. Analysis

Before a state prisoner may present a claim to a federal court, he must first exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*,

3

541 U.S. 27, 29 (2004). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement prevents the federal court from "upset[ting] a state court conviction" without first allowing the state courts an "opportunity to...correct a constitutional violation." *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). But even if a petitioner's claim is procedurally defaulted, a federal district court may still hear the merits of the claim if the petitioner meets one of two exceptions: (1) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court, *Schlup v. Delo*, 513 U.S. 298, 329 (1995); or (2) a showing of adequate legal cause for the default and prejudice arising from the default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Spotted Elk appears to argue he can establish both cause and prejudice to excuse the default, and his actual innocence. The Court will examine each in turn.

### i. Cause and Prejudice

A petitioner may overcome the prohibition on reviewing procedurally defaulted claims if he is able to show "cause" to excuse his failure to comply with the state procedural rule and "actual prejudice resulting from the alleged constitutional violation." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977). To establish cause for a default, a petitioner must show that some objective factor external to the defense impeded efforts to comply with the State's procedural rule. See, *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A factor is external to the petitioner if it "cannot fairly be attributed to him." *Coleman*, 501 U.S. at 753. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

In arguing adequate cause exists, Spotted Elk essentially recasts the same claims submitted in his Amended Petition. Spotted Elk asserts that he was never provided notice of the denial of his signed plea agreement. (Doc. 20 at 1.) Spotted Elk seems to argue this denial was a "fundamentally unfair act" that deprived him of due process, rendering his claims exempt from procedural requirements. *Id.* at 2. But the plea agreement that Spotted Elk entered into was not an agreement to

5

jointly recommend an appropriate disposition; it simply allowed the parties to argue for whatever legal sentence they deemed appropriate. See, (Doc. 14-2 at 3.) While Spotted Elk's counsel may have argued for a 20-year sentence, there was no obligation on the part of the state to support the recommendation, or on the part of the district court to follow the recommendation. In short, the plea agreement was not rejected.

Additionally, Spotted Elk argues that the district court judge who sentenced him was guilty of collusion because he had also been involved in a 1980 sexual assault prosecution of Spotted Elk. *Id.* at 2-3.[1] Spotted Elk also believes the state and district court exaggerated his criminal history, based in part on the 1980 assault, which resulted in the unduly harsh sentence he received. (Doc. 21 at 1-3.)

Had Spotted Elk perceived Judge Souza would be unfair because of a purported involvement in Spotted Elk's 1981 conviction, he could have moved for Judge Souza's recusal. He failed to do so. But, to the extent that Spotted Elk believes Judge Souza gave undue weight to the prior conviction, the record belies his belief. The district court provided a detailed basis for the sentence it imposed.

---

[1] It appears that underlying offense of conviction was committed on November 24, 1980; judgment was entered in this matter on January 9, 1981. See, (Doc. 21-1 at 18.) The original charge of felony Sexual Intercourse without Consent was amended to misdemeanor Sexual Assault. *Id.* Spotted Elk entered a guilty plea to the misdemeanor count and was sentenced to six months in the Yellowstone County Jail with credit for the time he had served. *Id.*

6

See, (Doc. 14-5 at 5-7.) Specifically, in relation to Spotted Elk's criminal history, the court noted:

> The Defendant has an extensive criminal history and history of violence. The Defendant has a conviction for Felony Assault in United States District Court, a Sexual Assault (Misdemeanor) that was amended from Sexual Intercourse without Consent (Felony) in State Court, and Second-Degree Murder in United States District Court for which the Defendant was sentenced to life in prison. Moreover, it is extremely rare that someone could be convicted of murder, sentenced to life, and then return to the criminal justice system on new felony charges.

*Id.* at 6, ¶ 5(a).

Thus, it appears the district court accurately recorded and understood Spotted Elk's record – in particular that the 1981 conviction had originally been charged as a felony but was subsequently amended to a misdemeanor. There is nothing to indicate that Judge Souza put undue weight on this conviction, rather he considered it in the overall context of Spotted Elk's criminal history.

Further, simply resubmitting his underlying claims in response to the order to show cause does not serve to set aside the default. Spotted Elk is restating issues of which he was already aware. He would have been aware whether the sentence conformed to his understanding of the plea agreement at the time of sentencing. He would have been aware of Judge Souza's involvement in his case at the outset of the prosecution. He has presented nothing to this Court that would explain his failure to present these claims to the Montana Supreme Court for consideration. See, *Murray*, 477 U.S. at 488. Or, put another way, the issues he

7

now raises as cause did not constitute external factors that prevented Spotted Elk from properly raising and exhausting his claims in the state courts. See, *Coleman*, 501 U.S. at 753. Thus, Spotted Elk has failed to demonstrate adequate cause to set aside the default.

### ii. Actual Innocence

Spotted Elk argues there was an insufficient factual basis to convict him because the officer who was the victim of Spotted Elk's assault did not suffer "serious bodily injury" as required by statute. *Id.*

As a preliminary matter, it appears Spotted Elk misinterprets the statute at issue. While causing serious bodily injury to a peace officer would meet the elements of offense under Mont. Code Ann. § 45-5-210(1)(d), one can also commit Assault on a Peace Officer by simply causing bodily injury (§ 45-2-210(1)(a)), or purposely or knowingly causing "reasonable apprehension of serious bodily injury in a peace or judicial officer by use of a weapon" (§ 45-5-210(1)(d)). Further, under Montana law a vehicle is considered a weapon. See e.g., *State v. York*, 81 P. 3d 1277, 318 Mont. 511 (2003).

Thus, contrary to Spotted Elk's allegation, the prosecutor did not need to prove the officer suffered serious bodily injury. But, even if the Court were to agree with Spotted Elk's interpretation of the statute at issue, it matters not, because he fails to make the requisite showing of actual innocence.

A petitioner claiming actual innocence must satisfy the *Schlup* standard by demonstrating "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Lee v. Lampert*, 653 F. 3d 929, 938 (9th Cir. 2011)(en banc). In the federal habeas context "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). To make a credible claim of actual innocence, petitioner must produce "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The habeas court then considers all the evidence: old and new, incriminating and exculpatory, admissible at trial or not. *House v. Bell*, 547 U.S. 518, 538 (2006). On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 330).

Spotted Elk has provided this Court with no new evidence of actual innocence. He has simply provided his own interpretation and disagreement with the application of state law. Read broadly, Spotted Elk's claim could perhaps be one of legal innocence. But in his Plea Agreement filed with the district court, Spotted Elk acknowledged:

> On December 31, 2015, I was stopped by Trooper Bateman while driving a passenger car. I agree that I put my vehicle into gear and accelerated toward

9

a building while Trooper Bateman was holding onto the side of the vehicle near the driver's side window. Despite the actions taken by Trooper Bateman, I agree that my actions caused Trooper Bateman a substantial risk of death or serious bodily injury.

(Doc. 14-2 at 3.)

Further, in its judgment the district court observed:

The circumstances of these offenses are very aggravating. The case began as a routine traffic stop. The Defendant only had to comply with Trooper Bateman's commands. Instead, the Defendant chose to attempt an escape. In the process, the Defendant endangered the Trooper's life, Mr. Knight's life, and put many citizens at risk. The Defendant made several deliberate choices: he put the vehicle in gear, drove away, and while looking at the Trooper's face as he hung on to the Defendant's car, chose to strike the Trooper repeatedly. The Trooper does not bear responsibility for this situation. The Trooper was justified in attempting to prevent the Defendant from getting back on the road based on his observations of the Defendant and the [New Year's Eve] holiday. Furthermore, the Defendant's conduct caused Trooper Bateman to be very fearful. Trooper Bateman's description of the fear he experienced is exceptional in light of his military combat experience. The video evidence presented at the hearing was alarming.

(Doc. 14-5 at 6, ¶ 5(b)).

Accordingly, Spotted Elk has failed to make a credible showing of legal innocence. But that is not the showing Spotted Elk must make. He must show that he is *actually* innocent; that is, that he did not commit an assault upon Trooper Bateman. Spotted Elk has made no such showing. Accordingly, he is unable to proceed further in these proceedings via the *Schlup* actual innocence gateway.

### iii. Conclusion

Because Spotted Elk has failed to demonstrate cause and prejudice or actual

10

innocence to excuse the procedural default of his claims, his petition should be dismissed as procedurally defaulted without excuse.

## II. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because Spotted Elk has not established an adequate basis to set aside the procedural default of his claims. There are no close questions and there is no basis to encourage further proceedings at this time.

Based upon the foregoing, the Court enters the following:

## RECOMMENDATION

1. Mr. Spotted Elk's Amended Petition (Doc. 3) should be DISMISSED as procedurally defaulted without excuse.

2. The Clerk of Court should be directed to enter a judgment of dismissal.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Spotted Elk may object to this Findings and Recommendation within 14 days.[2] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Mr. Spotted Elk must immediately notify the Court of any change in his mailing address.</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 1st day of October, 2019.

<u>/s/ Timothy J. Cavan</u>
Timothy J. Cavan
United States Magistrate Judge

---

[2] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Spotted Elk is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

12